**MALAVI CONSTRUCTION COMPANY, Plaintiff,**

v.

**SOUTH FLORIDA MACK TRUCKS, INC. and Henry R. Jahn & Son, Inc., Defendants.**

**HENRY R. JAHN & SON, INC., Third-Party Plaintiff,**

v.

**MACK TRUCKS, INC., Third-Party Defendant.**

No. 78 Civ. 1989.

United States District Court, S. D. New York.

Jan. 24, 1980.

---

Costello & Shea, New York City, for plaintiff; Michael Weinberger, New York City, of counsel.

Hertzog, Calamari & Gleason, New York City, for defendant, South Florida Mack Trucks, Inc.; William Simon, New York City, of counsel.

Cleary, Gottlieb, Steen & Hamilton, New York City, for third-party defendant, Mack Trucks, Inc.; Howard B. Stravitz, New York City, of counsel.

## MEMORANDUM OPINION

SOFAER, District Judge.

This motion for summary judgment poses a delicate and important question. To what extent should federal courts modify ordinary rules and procedures in light of current difficulties in Iran?

The issue arises in a number of cases on the docket of this court. Many involve efforts by American creditors to attach Iranian assets, and have been consolidated before Judge Duffy for initial hearing. That these cases generate sensitive issues is reflected by our State Department's request that suits for execution on Iranian assets be stayed. Our citizens are hostage and the effort to secure their release without bloodshed should proceed unhampered by provocative litigation, at least for as long as due process permits.

As the present case illustrates, delicate issues also arise in other categories of litigation involving Iran. This action concerns a claim by what the court is informed is a privately-held Iranian company, Malavi Construction Co., against an American broker, Henry R. Jahn & Son, Inc.; a company from whom plaintiff bought some trucks, South Florida Mack Trucks, Inc.; and a truck manufacturer, Mack Trucks, Inc. Malavi claims it specifically sought and negotiated for twenty dump trucks with dump bodies having a capacity to move 16 cubic yards of material. Defendant South Florida Mack had no such trucks, but allegedly offered smaller trucks that it claimed could be modified to include dump bodies that met Malavi's specifications. Malavi bought the substitutes, and shipped them to Iran, where they were used for highway construction near Qum, a place Americans now recognize somewhat more readily than in times past.

The trucks were a disaster. All agree they broke down, burned out, and were rapidly rendered useless in one way or the other. Malavi claims they broke down because they were simply unfit to lift the loads for which Malavi had purchased them. It sues, on several theories, to recover substantial damages.

South Florida Mack leaves uncontested, at this time, many of Malavi's allegations. It moves for summary judgment, however, on the ground that its purchase orders issued to the American agent, Jahn, and its delivery package forwarded to Iran with the trucks, contained effective disclaimers of all warranties other than those expressly stated, and no warranty was stated that could arguably be said to impose liability on

South Florida for the trucks' ineffectiveness.

Malavi strives mightily, through local counsel, to raise genuine issues of fact and thereby fend off summary judgment. Judged by the usual standards, however, it faces grave difficulties. Most telling of all, its principal witness (whom counsel prefers to leave unnamed for the witness' safety) is under arrest by one of Iran's ruling groups. A statement signed by this witness has been presented, but it is not sworn or notarized, although it contains a seal indicating it may have been prepared at the United States Embassy in Teheran when those premises were still serving their intended purposes. Other documents submitted by plaintiff appear authentic, though it is unclear whether plaintiff's version of their meaning can ever be confirmed by competent testimony. Additional evidence is promised, but has not been produced.

In a different context, defendants' argument that plaintiff has not properly demonstrated the existence of a triable issue of fact might prevail. But on this record, in this sort of case, should a federal court proceed to decide dispositive issues? I think not.

First, some practical issues must be faced. The parties should brief, within thirty days, the propriety of considering each item of Malavi's evidence. Specific consideration should be given to the plaintiff's claimed incapacity to obtain certain witnesses and material, and what rulings might be proper under the circumstances. Prior emergencies may have generated analogous litigation and instructive decisions.

Second, the government should be consulted as to the propriety of proceeding with even these "private" cases. We may well have here no more than an ordinary suit for breach of contract, breach of warranty, and negligence. Defendants may in fact ultimately succeed in showing the trucks broke down because they were used improperly, or that all warranties were effectively disclaimed. But this suit, and others like it, may well be viewed as part of the evidence by which the capacity and will of our nation to do justice is judged.

Iran and its people, it would appear to me, should be told in every possibly significant way that the United States stands ready to do them justice. Our federal and state courts are beyond the control of juntas, revolutionary committees, or royal families, and are sworn to do justice under a law that heeds the claims of citizens and foreigners alike. So long as our President and Congress mandate patience, we judges should, it would seem, strive to suspend judgment, thus leaving available to Iran and its people the opportunity to defend and vindicate their rights by regularizing once again our nations' relations.

Eventually, of course, this case—and the hundreds of similar cases—must be resolved. Our Executive should be heard on when that step should be taken, and by what set of rules. Therefore, the United States is requested to intervene, *amicus curiae*, and comment on the proper resolution of the issues posed by this litigation. Meanwhile, the motion for summary judgment is denied, without prejudice to its renewal at some appropriate time.

SO ORDERED.